UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOURDES BURGOS on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE PENNSYLVANIA STATE UNIVERSITY,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Lourdes Burgos ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant The Pennsylvania State University ("Penn State" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

**NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS**

1. This is a class action lawsuit on behalf of all people who paid tuition and fees for the Spring 2020 academic semester at Penn State, and who, because of Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the education for which they paid, and/or the services or which their fees were paid, without having their tuition and fees refunded to them.

2. Penn State is one of the country's largest public universities, with an enrollment of over 98,000 students. The university offers 160 degree options for undergraduate students as well as more than 190 graduate programs. Penn State also operates an online program called Penn State World Campus ("World Campus") which offers more than 150 online undergraduate

and graduate degree programs. Over 14,000 students are currently enrolled in Penn State's World Campus.

3. On March 11, 2020, Penn State, through a news release, announced that because of the global COVID-19 pandemic, all in-person classes would be suspended through April 3, 2020. The announcement informed students that beginning March 16, 2020, classes would instead be held remotely through online formats.

4. On March 18, 2020, Penn State announced that the "remote-delivery period" for all classes would continue through at least the end of the Spring Semester 2020. All on-campus student sponsored events and activities were also cancelled.

5. Penn State has not held any in-person classes since March 6, 2020. Classes that have continued have only been offered in an online format, with no in-person instruction.

6. As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Ms. Burgos and the putative class contracted and paid for. The online learning options being offered to Penn State students are subpar in practically every aspect, from the lack of facilities, materials, and access to faculty. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique. The remote learning options are in no way the equivalent of the in-person education that Plaintiff and the putative class members contracted and paid for.

7. Plaintiff and the putative class are therefore entitled to a refund of tuition and fees for in-person educational services, facilities, access and/or opportunities that Defendant has not provided. Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

8. Through this lawsuit Plaintiff seeks, for herself and Class members, Defendant's

disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided. Plaintiff seeks a return of these amounts on behalf of herself and the Class as defined below.

## PARTIES

9. Plaintiff Lourdes Burgos is a citizen of New York who resides in Bronx County, New York. Ms. Burgos is the parent of Penn State undergraduate student Jeffrey Binet, and paid her son's tuition for the Spring 2020 semester. Ms. Burgos paid approximately $17,608 in tuition and fees to Defendant for Spring Semester 2020. Ms. Burgos has not been provided a refund of any tuition monies paid, despite the fact that in-person classes have not been held since March 6, 2020.

10. Defendant The Pennsylvania State University is a state-related institution of higher education with its principal place of business at 201 Old Main, University Park, PA 16802.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

12. This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant conducts substantial business in this District and has sufficient minimum contacts with New York.

Defendant has solicited students residing in New York to attend it's institution; has accepted money, including application fees, tuition, and other fees from students residing in New York, has websites accessible to students in New York, has entered into contracts with New York residents, and generally has minimum contacts in New York sufficient to satisfy the Due Process Clauses of the New York and United States Constitutions.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff is a resident of the state in which the District is located. Specifically, the contract that is the subject of this action was formed in this District.

## FACTUAL ALLEGATIONS

### *Plaintiff And Class Members Paid Tuition And Fees For Spring Semester 2020*

14. Plaintiff and Class members are individuals who paid the cost of tuition and other mandatory fees for the Spring 2020 Semester at Penn State.

15. Spring Semester 2020 classes at Penn State began on or about January 13, 2020. Final exams for the semester are scheduled for end on or around May 8, 2020.

16. Plaintiff and Class members paid the cost of tuition for the Spring Semester 2020. They also paid other mandatory fees associated with the Spring Semester 2020, including a $265 per semester student fee.

17. Approximate tuition costs at Penn State for the Spring Semester 2020 are as follows:

- Pennsylvania Resident Lower Division Undergraduate (freshman or sophomore): $8,960
- Non-Pennsylvania Resident Lower Division Undergraduate (freshman or sophomore): $17,492
- Pennsylvania Resident Upper Division Undergraduate (junior or senior):

- $9,666 - $11,494 (depending on course of study)
- Non-Pennsylvania Resident Upper Division Undergraduate (junior or senior): $18,370-20,663 (depending on course of study)
- Pennsylvania Resident MBA Program: $13,721
- Non-Pennsylvania Resident MBA Program: $21,900
- Pennsylvania Resident – Other Graduate Programs: $11,232-$11,964 (depending on program)
- Non-Pennsylvania Resident – Other Graduate Programs: $19,099-$19,860 (depending on program)
- Law School: $25,946

18. Fees paid by or on behalf of Penn State students vary based on program of study. By way of example, undergraduate students for the 2019-2020 academic year paid a Student Fee of $265 per semester. Some Class members also purchased parking on their respective campuses, which also has not been refunded even though the parking services are no longer available to them.

19. The tuition and fees described in the paragraphs above are provided by way of example; total damage amounts – which may include other fees that are not listed herein but that were not refunded – will be proven at trial.

### *In Response To COVID-19, Penn State Closed Campuses And Cancelled All In-Person Classes*

20. On March 11, 2020, Penn State, through a news release, announced that because of the global COVID-19 pandemic, all in-person classes would be suspended effective March 16, 2020. The announcement informed students that all classes would instead be held remotely through online formats.

21. On March 18, 2020, Penn State announced that the "remote-delivery period" for all classes would continue through at least the end of the Spring Semester 2020. All on-campus student sponsored events and activities were also cancelled.

22.     Since March 6, 2020, Penn State has not held any in-person classes.  The closure of Penn State's campuses has been extended through the end of Spring Semester 2020.  Classes that have continued have only been offered in an online format, with no in-person instruction.  Even classes for students with concentrations in areas where in-person instruction is especially crucial (such as music, theatre, and the sciences) have only had access to minimum online education options.

23.     As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiff and the putative class contracted and paid for.  Plaintiff and the putative class are therefore entitled to a refund of all tuition and fees for services, facilities, access and/or opportunities that Defendant has not provided.  Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

24.     Plaintiff and members of the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's institution and enroll on an in-person basis.

25.     Defendant markets the Penn State on-campus experience as a benefit of enrollment on Penn State's website:



6

26. The online learning options being offered to Penn State students are subpar in practically every aspect, from the lack of facilities, materials, and access to faculty. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

27. The remote learning options are in no way the equivalent of the in-person education putative class members contracted and paid for. The remote education being provided is not even remotely worth the amount charged class members for Spring Semester 2020 tuition. The tuition and fees for in-person instruction at Penn State are higher than tuition and fees for other online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

- Face to face interaction with professors, mentors, and peers;
- Access to facilities such as libraries, laboratories, computer labs, and study room;
- Student governance and student unions;
- Extra-curricular activities, groups, intramural sports, etc.;
- Student art, cultures, and other activities;
- Social development and independence;
- Hands on learning and experimentation;
- Networking and mentorship opportunities.

28. The fact that Penn State students paid a higher price for an in-person education than they would have paid for an online education is illustrated clearly by the vast price difference in Penn State's in-person, on-campus programs versus Penn State's own online learning program. Undergraduate tuition for Spring Semester 2020 at Penn State's main campus in University Park, PA costs $17,492 for non-resident freshman and sophomores, and ranges

from $18,370-$20,663 for non-resident juniors and seniors depending on the program of study. For Pennsylvania residents, Spring Semester 2020 tuition at Penn State's main campus is $8,960 for freshman and sophomores, and ranges from $9,666-$11,494 for juniors and seniors depending on the program of study. Penn State's own online education program, Penn State World Campus, costs just $6,994 for freshman and sophomores, and $7,549 for juniors and seniors.

29. For non-residents of Pennsylvania, the cost of one semester of an in-person education at Penn State is **more than double** the cost of a semester of online education at the same university. For residents of Pennsylvania, the cost of one semester of in-person education at Penn State is **nearly 1.5 times** the cost of a semester of online education at the same university, as shown in the chart below:

| Spring Semester 2020 Tuition – Full Time Undergraduate | | | |
|---|---|---|---|
|  | Penn State World Campus Online | In Person Education at Penn State's Main Campus (Non-Residents) | In Person Education at Penn State's Main Campus (PA Residents) |
| Lower Division (Freshman & Sophomore) | $6,994 | $17,492 | $8,960 |
| Upper Division (Junior & Senior) | $7,549 | $18,370 - $20,663 (depending on program) | $9,666-$11,494 (depending on program) |

30. Through this lawsuit Plaintiff seeks, for herself and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided. Plaintiff seeks return of these amounts on behalf of herself and the Class

as defined below.

## CLASS ALLEGATIONS

31.     Plaintiff seeks to represent a class defined as all people who paid Penn State Spring Semester 2020 tuition and/or fees for in-person educational services that Penn State failed to provide, and whose tuition and fees have not been refunded (the "Class"). Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

32.     Plaintiff also seeks to represent a subclass consisting of Class members who reside in New York (the "Subclass").

33.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

34.     **Numerosity.** The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands of members in the Class and Subclass. Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendant and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

35. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Defendant accepted money from Class and Subclass members in exchange for the promise to provide services;

(b) whether Defendant has provided the services for which Class and Subclass members contracted; and

(c) whether Class and Subclass members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide.

(d) whether Defendant has unlawfully converted money from Plaintiff, the Class and Subclass; and

(d) whether Defendant is liable to Plaintiff, the Class, and Subclass for unjust enrichment.

36. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendants that are unique to Plaintiff.

37. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class and Subclass. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass. Furthermore, Plaintiff has no interests that are antagonistic

to those of the Class or Subclass.

38.     **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

39.     In the alternative, the Class and Subclass may also be certified because:

(a)     the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class

as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
### Breach Of Contract
### (On Behalf Of The Class And Subclass)

40. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

41. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendants.

42. Through the admission agreement and payment of tuition and fees, Plaintiff and each member of the Class and Subclass entered into a binding contract with Defendant.

43. As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above. Plaintiff, Class, and Subclass members fulfilled their end of the bargain when they paid monies due for Spring Semester 2020 tuition. Tuition for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020. In exchange for tuition monies paid, Class and Subclass members were entitled to in-person educational services through the end of the Spring Semester.

44. Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above. Defendant has retained monies paid by Plaintiff and the Class for their Spring Semester 2020 tuition and fees, without providing them the benefit of their bargain.

45. Plaintiff and members of the Class and Subclass have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the

education, experience, and services to which they were promised and for which they have already paid.

46. As a direct and proximate result of Defendant's breach, Plaintiff, the Class, and Subclass are entitled to damages, to be decided by the trier of fact in this action, to include but no be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant has failed to deliver. Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since Penn State shut down on March 16, 2020.

47. Defendant's performance under the contract is not excused due to COVID-19. Indeed, Defendant should have refunded the pro-rated portion of any education services not provided. Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services it will not provide.

## COUNT II
### Unjust Enrichment
### (On Behalf Of The Class And Subclass)

48. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

49. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

50. Plaintiff and members of the Class and Subclass conferred a benefit on Defendant in the form of monies paid for Spring Semester 2020 tuition and other fees in exchange for certain service and promises. Tuition for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020. In exchange for tuition monies paid, Class members were entitled to in-person educational services through the end of the Spring Semester.

51. Defendant voluntarily accepted and retained this benefit by accepting payment.

52. Defendant has retained this benefit, even though Defendant has failed to provide the education, experience, and services for which the tuition and fees were collected, making Defendant's retention unjust under the circumstances. Accordingly, Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since Penn State shut down on March 16, 2020.

53. It would be unjust and inequitable for Defendant to retain the benefit, and Defendant should be required to disgorge this unjust enrichment.

## COUNT III
### Conversion
### (On Behalf Of The Class And Subclass)

54. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

55. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

56. Plaintiff and members of the Class and Subclass have an ownership right to the in-person educational services they were supposed to be provided in exchange for their Spring Semester 2020 tuition and fee payments to Defendant.

57. Defendant intentionally interfered with the rights of Plaintiff, the Class, and Subclass when it moved all classes to an online format and discontinued in-person educational services for which tuition and fees were intended to pay.

58. Plaintiff and members of the Class and Subclass demand the return of the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since Penn State shut down on March 16, 2020.

59. Defendant's retention of the fees paid by Plaintiff and members of the Class and Subclass without providing the educational services for which they paid, deprived Plaintiff, Class and Subclass members of the benefits for which the tuition and fees paid.

60. This interference with the services for which Plaintiff and members of the Class and Subclass paid damaged Plaintiff and Class members in that they paid tuition and fees for services that will not be provided.

61. Plaintiff, Class and Subclass members are entitled to the return of pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since Penn State shut down on March 16, 2020.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

(b) For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

(c) For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) For an order awarding Plaintiff and the Class and Subclass her reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: April 20, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Joseph I. Marchese*
         Joseph I. Marchese

Joseph I. Marchese
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot *(pro hac vice* app. forthcoming*)*
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Attorneys for Plaintiff*